```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
DEANDRE MORRISON,                       :
                                        :        23cv2526 (DLC)
                     Petitioner,        :        18cr41-14 (DLC)
          -v-                           :
                                        :        OPINION AND ORDER
UNITED STATES OF AMERICA,               :
                                        :
                     Respondent.        :
                                        :
---------------------------------------X
```

DENISE COTE, District Judge:

On September 13, 2019, following a plea of guilty, the
defendant Deandre Morrison was sentenced principally to a term
of imprisonment of 318 months.  Morrison has recently filed a
petition for a writ of habeas corpus.  He claims that his
assigned counsel was ineffective in connection with his
sentencing proceeding and in not filing a notice of appeal when
requested to do so.  Because Morrison has failed to show that he
was sufficiently diligent in filing the petition, it is denied
as untimely.

## Background

Morrison was arrested on July 17, 2018, on charges unsealed
in the Southern District of New York on June 27, 2018.  Morrison
was indicted as a member of the MacBallas, a subset of the
criminal organization known as the Bloods.  The MacBallas

operated in the area of the Melrose and Jackson housing projects
in the Bronx.

On August 27, 2018, Morrison was indicted in three counts
in connection with his membership in the MacBallas and his
murder of Danny Delgado, a murder which Morrison committed at
the request of a high-ranking member of the MacBallas.  Because
of his indictment on death-eligible counts, death-qualified
counsel was appointed to represent Morrison in addition to his
already assigned CJA counsel.

Defense counsel received approval from the Court to retain
a mitigation specialist.  That specialist requested educational,
medical, and psychological records that counsel deemed critical
to the defendant's mitigation arguments.

Approximately one month after the Government notified the
defendant that it would not seek the death penalty, the
defendant entered a plea of guilty.  A two-count superseding
information, filed on May 23, 2019, charged Morrison with
participating in a RICO conspiracy and with conspiring to
distribute crack cocaine.  Pursuant to a written plea agreement
with the Government, Morrison entered a plea of guilty that day
to both counts.

In the plea agreement, the parties stipulated to an offense
level of 40 and Criminal History Category of VI, which resulted
in a sentencing guidelines range of 360 to 480 months'

imprisonment.  But for the statutory maximum sentences for the two counts, the guidelines range would have been 360 months' to life imprisonment.  At the plea, Morrison was represented by two experienced CJA counsel.  The plea agreement contained a waiver of appeal rights so long as Morrison was not sentenced to more than 480 months' imprisonment.  Morrison acknowledged the plea agreement and appellate waiver during his plea allocution.

In explaining why he was guilty, Morrison said that he shot and killed Delgado to increase his own status as a MacBalla.  He also admitted that he sold crack cocaine in the Melrose Houses over a period of seven years as part of his agreement with others.

Three handwritten letters from Morrison were docketed on June 28, 2019.  In them, Morrison sought leniency.

The Pre-Sentence Report ("PSR") contains a description of Morrison's mental and emotional health challenges, among other things.  Morrison reported that he has been diagnosed with bipolar disorder and was amenable to mental health treatment. It also reports that Morrison had enrolled in a GED program but had not completed the program.  He explained to the Probation Department that he has a learning disorder.  The PSR recommended mental health treatment as a condition of supervised release, as well as enrollment in educational and vocational programs.

Defense counsels' sentencing submission of August 30, 2019, requested a sentence of twenty years' imprisonment in light of the mitigating factors set out in the submission.  Among the many mitigating factors it described were the following.  It described Morrison's challenging childhood and struggles in school due to cognitive delays, including having an IQ of 83. It described the lasting impact of trauma on him, and how his mental health had deteriorated.  It described an education that was disrupted and explained why he would benefit from further education and the opportunity to attend a drug treatment program.  One of the attachments to the submission was medical records from Bellevue Hospital in 2014 following a suicide attempt by Morrison.

In a sentencing submission of September 9, 2019, the Government described Morrison's many acts of violence and his continued participation in the MacBallas while in custody on the federal charges.  It sought a sentence of at least 360 months' imprisonment.

On September 13, 2019, Morrison was sentenced.  After the prosecutor spoke, both defense counsel made extensive remarks. When the defendant spoke, he apologized to the Delgado family and the community affected by his actions.  He indicated that he was not going "to make excuses" for his actions and that he knew that what he had done was "wrong."  He asked for leniency.

4

The Court imposed a sentence of 360 months' imprisonment, before giving Morrison credit for 42 months' already spent in state custody in connection with state charges for the Delgado murder.[1]  As a result, the term of imprisonment was 318 months, to be served consecutively to a state sentence that the defendant was then serving on other charges.  The defendant was advised of his right to appeal.

The defendant did not file an appeal.  In the ordinary course, therefore, Morrison's time to file a petition for a writ of habeas corpus would have expired on September 28, 2020.

Almost three years after his sentencing proceeding, Morrison wrote to the Court again.  In a handwritten letter dated August 6, and docketed on August 16, 2022, the defendant asserted that his counsel was ineffective because he had not responded to Morrison's request to file an appeal.  The letter explained that Morrison had difficulty getting his property and had filed a tort claim against MDC Brooklyn because of that.

An Order of August 24, 2022, required Morrison to state whether he wished his letter to be treated as a petition for a writ of habeas corpus and, if so, to demonstrate that extraordinary circumstances had prevented him from bringing his

---

[1] Morrison had been charged and tried for the Delgado murder in state court.  He was acquitted of the murder and resolved the prosecution as part of a "global plea."  He spent 42 months in state custody on those charges.

petition within the one-year time period for such petitions.
The Order explained that to benefit from equitable tolling,
Morrison had to establish not only extraordinary circumstances
that had prevented him from filing a timely petition but also
that he had acted with reasonable diligence during the period
for which he sought tolling.  Morrison did not respond within
the period provided and the petition was dismissed as time-
barred on October 24.

On October 31, 2022, Morrison indicated in a handwritten
letter to the Court that he did not wish the August letter to be
construed as a § 2255 petition, and that he had written in
September to advise the Court of that decision.  The letter was
docketed on November 9.  According to Morrison, his September
letter had explained that he intended to file a habeas petition
at a later date.  Morrison added that he could not do so at that
time because he was in restrictive custody, did not have access
to his legal documents, and needed help from counsel to properly
prepare his petition.  An Order of November 9 stated that the
defendant's August 16 letter is not construed as a § 2255
motion.

In a typewritten letter dated March 15 and docketed on
March 21, 2023, Morrison again complained that his attorney did
not respond to his request to file an appeal and explained that
he had not timely filed a § 2255 petition because his attorney

did not respond to Morrison's requests to provide him with
pertinent legal documents.  He again asked for counsel to be
assigned to assist him.  An Order of April 18, advised Morrison
that his March 15 letter would be construed as a petition for a
writ of habeas corpus, recited the standard for equitable
tolling, and explained that a petition should specify all
grounds for relief.  It required Morrison by June 2 to
articulate all of his grounds for relief and demonstrate that he
had acted diligently and that there were extraordinary
circumstances that had prevented the timely filing of his
petition.

In a handwritten letter docketed on May 11, Morrison
explained why he was unable to meet the current deadline for
filing a petition, sought an extension, and again requested that
counsel be appointed to represent him.  Morrison sent three
similar handwritten requests, which were docketed on May 30,
June 6, and June 16.

Having been granted several extensions, Morrison filed his
petition on July 20, 2023 ("Petition").  It is nine pages long
and dated July 5, 2023.  The description in this Opinion of
Morrison's experiences, including his explanations for the delay
in filing his Petition, are taken from the July 20 filing.
Morrison asserts in his Petition that his attorney was
ineffective for not requesting a mental health evaluation for

7

him and for failing to file a notice of appeal despite
Morrison's request that he do so.

### Discussion

A § 2255 petition must be filed within one year of one of
four benchmark dates.  As relevant to this motion, the one year
period runs from "the date on which the facts supporting the
claim or claims presented could have been discovered through the
exercise of due diligence."  Wims v. United States, 225 F.3d
186, 189 n.2 (2d Cir. 2000) (citing 28 U.S.C. § 2255(f)(4)).

A petitioner may secure equitable tolling of the
limitations period for filing a federal habeas petition only in
"rare and exceptional circumstances."  Clemente v. Lee, 72 F.4th
466, 478 (2d Cir. 2023) (citation omitted).  To benefit from
equitable tolling, the petitioner must establish that: (a)
extraordinary circumstances prevented him from filing a timely
petition, and (b) he has been pursuing his rights diligently.
Doe v. United States, No. 22-843, 2023 WL 4874694, at *4 (2d
Cir. Aug. 4, 2023); Holland v. Florida, 560 U.S. 631, 649
(2010).  "The diligence required for equitable tolling purposes
is reasonable diligence, not maximum feasible diligence."  Doe,
at *6 (citation omitted).  The party seeking equitable tolling
"is required to show reasonable diligence in pursuing his claim
throughout the period he seeks to have tolled."  Smalls v.

Collins, 10 F.4th 117, 145 (2d Cir. 2021) (citation omitted).

"This showing cannot be made if the party, acting with

reasonable diligence, could have filed on time notwithstanding

the extraordinary circumstances." Id. (citation omitted).

To establish ineffective assistance of counsel, a

petitioner must demonstrate that:

> (1) his counsel's representation fell below an
> objective standard of reasonableness, and (2) this
> deficient performance caused prejudice to the
> defendant -- that is, there is a reasonable
> probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been
> different.

United States v. Overton, 24 F.4th 870, 880 (2d Cir. 2022)

(citing Strickland v. Washington, 466 U.S. 668, 688, 694

(1984)).  Failure to file a notice of appeal when requested is

ineffective assistance from which prejudice is presumed even

when there is a waiver of appeal.  Garza v. Idaho, 139 S. Ct.

738, 744 (2019).

Morrison's Petition seeks a resentencing on the ground that

his attorney failed to provide him with effective assistance of

counsel by not ordering a mental health examination to support

his mitigation arguments at the September 2019 sentencing

proceeding.  Morrison also asserts that his attorney was

ineffective for not filing a notice of appeal despite Morrison's request in September 2019 that he do so.[2]

In the ordinary course, Morrison's time to file a petition for a writ of habeas corpus would have expired on September 28, 2020, which is one year from the date his notice of appeal was required to be filed.  For the following reasons, however, it will be assumed that Morrison's time to file his habeas petition expired no later than December of 2021, and that Morrison's petition was filed on August 6, 2022.  Morrison has failed to show that during that during the period between December of 2021 and August of 2022 he was reasonably diligent in pursuing his habeas remedy.  Therefore, this Petition is dismissed as untimely.

I.   Morrison's Transfers Between Prison Facilities

To provide context for the analysis that follows, it is helpful to describe Morrison's journey through state and federal prisons as described in his Petition.  On October 2, 2019, he

---

[2] Morrison's petition does not identify any issue that would have been appropriately raised on a direct appeal of his conviction. The only issue for appeal that Morrison has identified in his petition is his attorney's failure to obtain a mental health examination to support mitigation arguments during the sentencing proceeding.  Such claims must ordinarily be brought through a habeas petition.  See United States v. Fiseku, 915 F.3d 863, 874 (2d Cir. 2018).  Thus, this may be the rare petition in which the presumption of prejudice from the failure to file a direct appeal of the conviction has been rebutted. See, e.g., United States v. White, 174 F.3d 290, 295 (2d Cir. 1999).

was transferred from the MDC Brooklyn to Pennsylvania state
custody.  (Morrison had been in federal court on a writ ad
prosequendum.)  Following transfers between different state
facilities, Morrison returned to federal custody on December 27,
2021.  Upon his return to federal custody, Morrison spent time
in the Columbia County Prison, the Lackawanna County Prison,
U.S.P Canaan beginning on February 7, 2022, and U.S.P. Terre
Haute, where he is now held, among other facilities.

II.  Exceptional Circumstances

Morrison identifies several circumstances which he contends
qualify as extraordinary and that excuse his failure to file a
timely petition.  The first of these is his attorney's
ineffective assistance, in particular his counsel's failure in a
September 20, 2019 letter to Morrison to address Morrison's
request earlier that month to appeal his conviction.

Morrison argues that his incarceration in state custody
from October 7, 2019 to December 27, 2021, is a second
extraordinary circumstance.  He explains that at various points
during that incarceration he was placed in restrictive
confinement and had no money in his inmate account to make a
telephone call or buy stamps to communicate with his attorney.

As a third circumstance, Morrison explains that he was very
depressed and hopeless.  He adds that he secretly felt suicidal
and suffers from learning disabilities.

11

As a fourth circumstance he explains that the COVID-19 pandemic prevented him from filing a timely petition.   In October 2020, while in state custody, he had planned to reach out to his attorney again about his appeal and to do his own research about an appeal, but contracted COVID and became very ill.

Morrison identifies the Bureau of Prisons' loss of his property, including his documents concerning this prosecution, as a fifth circumstance.

Morrison adds as a sixth circumstance his lack of knowledge of federal post-conviction remedies.

III. The One-Year Statute of Limitation Period Began No Later Than December 2020

It is assumed that Morrison would have discovered no later than December of 2020 that his attorney had not filed a notice of appeal in September of 2019.   In the Petition, Morrison describes the following sequence of events.   He asserts that he wrote to his lawyer on September 13, 2019, "stating that I want to appeal my sentence on the grounds of ineffective assistance of counsel."   Morrison's letter also requested a copy of his sentencing transcript.   Morrison reports that on September 20, 2019, Morrison's lawyer sent him a copy of the docket sheet but "mentioned nothing" about an appeal.   As of that date, therefore, Morrison had reason to believe that his attorney had

not filed a notice of appeal.  There was no indication of such a
filing on the docket sheet and his attorney was silent regarding
an appeal.  Indeed, it is his attorney's failure to mention the
appeal in the September 20 letter that Morrison describes as
ineffective assistance.

Morrison did not write to his attorney again until December
of 2020.  Morrison explains that in the interim he was moved
from one prison facility to another and frequently placed in the
SHU or restrictive housing.  The Petition explains that in the
December 2020 letter he asked his attorney for a copy of his
legal documents and inquired whether the attorney ever filed the
appeal.  Despite calls made to his attorney by his mother and
girlfriend, Morrison received no response to his inquiry.  He
reports that at that point he "gave up again because I had less
than a year left until I'm transferred back into federal
custody."

The Petition reports that Morrison did not write to his
attorney again until some point after February 7, 2022, when he
arrived at U.S.P. Canaan.  Accordingly, it will be assumed for
purposes of this petition that from no later than December 2020
Morrison had possession of the facts supporting a claim that his
attorney had not filed a notice of appeal in September 2019
despite Morrison's request that his attorney do so.  Although
Morrison had sent two letters to his attorney in 2019 and 2020,

13

and his mother and girlfriend had called his attorney, he was
unable to get a response from his attorney about the appeal.
Moreover, despite the passage of fifteen months from the date of
his sentence (from September 2019 to December 2020), his
attorney had not communicated with him about the substance of
any appeal, including what issues Morrison might wish to include
in the appeal, or about the schedule for the appeal.  Morrison
had to assume by no later than December 2020 that no appeal had
been filed.

IV.  Morrison's Lack of Diligence Following December 2021

     The Orders of August 24, 2022, and April 18 and June 16,
2023, advised Morrison that to obtain equitable tolling of the
one-year period for filing a habeas petition he had to show the
existence of exceptional circumstances and his own diligence.
The period that must be tolled begins, at the latest, in
December 2021.[3]

     Morrison has failed to show that he acted with reasonable
diligence not only during the period following December 2021,
but also from at least December of 2020.  Morrison essentially
decided in December of 2020 to wait until he returned to federal

---

[3] This date represents one-year after "the date on which the
facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence."  §
2255(f)(4).  Morrison need not show diligence during the one-
year period in which he was entitled to rest on his claim.
Wims, 225 F.3d at 190.

custody in December 2021 to pursue his federal habeas petition, and then took another eight months after he entered federal custody to do so.

Morrison explains that after he recovered from COVID in late 2020, he wrote his attorney in December of 2020 for a second time, asked for his legal documents, and inquired whether the attorney had filed a notice of appeal.  He also asked his mother and girlfriend to call the attorney, but they received no response.[4]  Morrison admits that at that point he gave up because he had less than a year left until he would be transferred back into federal custody.

Morrison returned to federal custody in December of 2021. In February 2021, after he arrived at U.S.P. Canaan, he wrote his attorney for a third time and sent him an email as well.  It was not until August of 2022, however, that Morrison wrote to the Court.  He explains that in the intervening months he had learned about "post-conviction motions" and that he was "over my one year time limit to file a petition for a 2255."  Thus, while

---

[4] The Petition explains that Morrison's attorney has told him that the attorney sent Morrison six letters after his sentencing, including letters of September 20, 2019, October 11, 2019, January 21, 2020, and September 2022.  Morrison reports that he only received the first and last of these four listed letters, and not the October 2019 or January 2020 letters.

in federal custody, Morrison waited another eight months to write the Court.

It is assumed for purposes of calculating the tolling period during which Morrison must demonstrate reasonable diligence, that the period ended in August 2022, even though Morrison asked the Court not to treat his August 2022 submission as his petition.  Given the eight months over which Morrison failed to act with reasonable diligence, it is unnecessary to explore whether Morrison has shown that he was sufficiently diligent between August 2022 and July 2023, when he filed the Petition.

Even when the extraordinary circumstances that Morrison has listed are considered, they do not show that he was sufficiently diligent between December 2021 and August 2022.  For instance, as Morrison's many handwritten letters to the Court illustrate, including those he wrote in advance of his sentencing, Morrison's mental and educational deficits are not sufficiently severe to prevent him from communicating effectively with the Court and advocating on his own behalf.  Besides his own resources, Morrison has a network of family and friends.  In support of his petition, Morrison submitted a contact list from the Bureau of Prisons TRULINCS system.  It lists seven siblings,

parents, two friends, and two attorneys,[5] including his counsel of record in this prosecution.

Finally, ignorance of the one-year time limit for filing a habeas petition does not constitute an excuse for a late filing. See United States v. Wheaten, 826 F.3d 843, 853 (5th Cir. 2016); Socha v. Boughton, 763 F.3d 674, 685 (7th Cir. 2014); Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 464 (6th Cir. 2012); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000); see also Dezaio v. Port Auth. of NY & NJ, 205 F.3d 62, 64 (2d Cir. 2000).

## Conclusion

DeAndre Morrison's July 20, 2023 petition for a writ of habeas corpus is denied as untimely.  The defendant having not made a substantial showing of a denial of a federal right, a certificate of appealability shall not be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of Court shall mail Morrison a copy of this Order

---

[5] One of the attorneys is a former federal judge.

and note mailing on the docket.

Dated:      New York, New York
            September 6, 2023

                              _____
                                      DENISE COTE
                              United States District Judge